# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JAMES WHETZEL, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:07-CV-210-TS |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff James Whetzel appealed to the district court from a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The Plaintiff claims he is entitled to DIB and SSI because he has been disabled since September 1, 1996, due to epilepsy and Asperger's syndrome.

On December 28, 2007, this Court referred the matter to Magistrate Judge Roger Cosbey for a report and recommendation. Magistrate Judge Cosbey filed a Report and Recommendation [DE 21] on August 21, 2008, recommending that the Commissioner's decision be affirmed. In Magistrate Judge Cosbey's Report, he concludes that the administrative law judge's (ALJ) credibility determination was based upon specific reasons supported by the record and was not patently wrong, that substantial evidence supported the ALJ's evaluation of Dr. Frank Cyran's medical opinion, and that substantial evidence supported the ALJ's finding that the Plaintiff only had moderate limitations in concentration.

On September 2, 2008, the Plaintiff filed objections to the Report and Recommendation.

The Plaintiff argues that the Report and Recommendation fails to address his argument that there exists no evidence in the record that he could ever successfully work full time without accommodations. He claims that the opinion of Dr. Frank Dodzik, rather than supporting the ALJ's finding that the Plaintiff's concentration impairment was moderate, should have been taken to conclude that he "could not perform regular, competitive work." (Pl's Objection 2, DE 22,) because Dr. Dodzik concluded that the Plaintiff could return to school or work "with adaptive services." (*Id.*) The Plaintiff also contends that when Dr. Dodzik's report is considered along with the evaluation of psychologist Rosalind Huang, they indicate more than a moderate impairment of the Plaintiff's ability to concentrate, and that the ALJ should have given Dr. Huang's report greater weight than he did. Additionally, the Plaintiff disagrees with the amount of discretion the Magistrate Judge afforded the ALJ's determination that the Plaintiff and his mother were not entirely credibile regarding the intensity, persistence, and limiting effects of the Plaintiff's symptoms, specifically as it related to the Plaintiff's explanation for noncompliance with his medical treatment and the impact of his daily activities.

Because the Plaintiff has objected to the Magistrate Judge's Recommendation and Report, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court will start with the Plaintiff's challenge to the ALJ's credibility determination.

### A. Credibility Determination

An ALJ's credibility determination will be upheld if he has given specific reasons for the

finding that are supported by substantial evidence. *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007). The ALJ found that the Plaintiff and his mother were not entirely credible concerning the intensity, persistence, and limiting effects of the Plaintiff's symptoms. The ALJ stated that their statements on these matters were not entirely consistent with or fully supported by the medical and other evidence of record, or by the Plaintiff's conduct. First, the ALJ noted a "pervasive seizure medication non-compliance issue" (R. 22), and that the seizures were controlled when the Plaintiff was taking his medications. The ALJ stated that an alarmed pill box and adaptive training had been successful, and would likely continue, aiding the Plaintiff to comply. The ALJ also analyzed the Plaintiff's credibility in light of his own testimony and conduct, noting that the Plaintiff lived with his fiancé in their own apartment, saw friends on a daily basis to watch movies and play games, and helped neighbors with simple chores. In his discussion of credibility, the ALJ also cited the Plaintiff's work history. When discussing the Plaintiff's neuropsychological testing results, the ALJ noted the Plaintiff's concentration issues as well as the evaluator's conclusion that some of the Plaintiff's attention problems were probably seizure related.

**1.**     *Noncompliance with Medical Treatment*

In assessing a claimant's credibility, an ALJ can consider noncompliance with prescribed treatment. An ALJ may determine that an individual's statements are less credible when records show that he is not following the treatment as prescribed and there are no good reasons for this failure. 20 C.F.R. § 416.930(a) & (b) ("[I]f you do not follow the prescribed treatment without a good reason, we will not find you disabled"); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.

3

2005) (noting that a failure to follow a recommended course of treatment weighs against a claimant's credibility); SSR 96-7p (stating that an individual's statements may be less credible if the record indicates that the individual is not following the treatment prescribed). The ALJ must consider any explanation that the claimant provides for noncompliance.

The Plaintiff provided two explanations for his noncompliance: (1) his inability to pay for the medication; and (2) his poor memory caused by his seizures. The Plaintiff claims that the ALJ's credibility determination relies on erroneous reasoning and that Magistrate Judge Cosbey did not fully address these errors. Specifically, he argues that the Magistrate Judge should not have found that the ALJ fulfilled his duty to consider the Plaintiff's explanation for his noncompliance—his inability to afford his medication—by simply observing that the Plaintiff had been employed. He contends that this was not adequate unless the record also supports an inference that the Plaintiff could pay for both living expenses and his medical treatment on the income from his employment, which, he contends, it did not. The Plaintiff also argues that the fact that the ALJ noted that an alarmed pillbox helped the Plaintiff to remember to take his medication was only relevant if the ALJ first properly responded to the Plaintiff's financial explanation for his noncompliance.

In his findings, the ALJ noted that financial constraints were cited in the medical evidence for the lack of medication, "despite the fact" that he had "been working on a fairly sustained basis." (R. 22.) Although the record reveals that the Plaintiff lost Medicaid at one point, earned little money working part time, and experienced periods of unemployment, there was also evidence of his employment. Moreover, there was evidence in the record that when the Plaintiff was given aids to help him remember to take his medicine, financial constraints did not

create a separate hindrance to his compliance. Thus, the record contained relevant and specific evidence that a reasonable mind "might accept as adequate to support [the] conclusion," *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004), that the Plaintiff's claim that he could not afford his medication was not a good reason for his noncompliance. The ALJ considered the Plaintiff's explanation in light of the evidence in the record and concluded that he had the ability to control his seizures by obtaining and taking prescribed medication. This Court cannot "displace the ALJ's judgment by reconsidering facts or evidence," *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007), and a credibility determination will stand as long as there was some support in the record even if some of the ALJ's credibility determinations were a bit harsh, *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008).

Moreover, as stated in the Report and Recommendation, the ALJ did not discredit the Plaintiff's and his mother's statement about the intensity, persistence, and limiting effects of his symptoms merely because he was noncompliant with his medication regime (or because his explanation for noncompliance was questionable).

**2.**   ***Others Reasons Supporting Credibility Determination***

In addition to issues regarding medication compliance, the ALJ considered the Plaintiff's daily activities and work history as not fully supporting and consistent with the Plaintiff's complaints about the severity of his symptoms. It is proper for an ALJ to consider a claimant's daily activities as a factor when assessing the credibility of a claimant's complaints. 20 C.F.R. §§ 404.1529(c) & 416.929(c); SSR 96-7p. The Plaintiff argues that activities such as living with a fiancé, socializing with friends, and taking out the trash for an elderly couple in his apartment

complex "are not inconsistent with disability since total social isolation is not a prerequisite." (Pl.'s Objection 4, DE 22.) Notably, this argument does not address whether these daily activities made the Plaintiff's statements about the severity of his symptoms less credible. The Plaintiff does not even attempt to make a comparison between his activities and the statements he and his mother presented about the limiting effects of his condition.

In his objection to the Magistrate Judge's Report and Recommendation, the Plaintiff essentially argues that the evidence of his daily activities, when weighed against the evidence that he had poor memory, was fired by another employer for excessive absenteeism, and was refused more hours by one employer, is insufficient to support the ALJ's credibility determination. The ALJ considered the Plaintiff's memory issues and his past and current work history in the context of the entire record, including the fact that many of his employment issues were impacted by his medical noncompliance. Therefore, the ALJ sufficiently articulated his assessment of the evidence of record to assure this Court that he considered the important evidence and to enable the Court to trace the path of his reasoning. Moreover, during his analysis of the Plaintiff's activities, the ALJ did not appear to overstate the import of the Plaintiff's activities, noting that it indicated he was capable of doing simple work activity that is not too strenuous. Even this level of activity was inconsistent with the Plaintiff's portrayal of the severity of his symptoms, and thus undermined his credibility. The Plaintiff asks this Court to substitute its judgment for that of the ALJ's by reconsidering facts, reweighing evidence, and deciding questions of credibility, which is beyond the scope of its review.

**B. The ALJ's Finding that the Defendant had Moderate Difficulties in Maintaining Concentration, Persistence, or Pace**

The Plaintiff submits that the ALJ should have found that the Plaintiff's concentration impairment was severe, as opposed to moderate. The Plaintiff highlights particular pieces of evidence that he contends support his position and that the ALJ and Magistrate Judge got wrong. In December 2004 and January 2005, neuropsychologist Frank Dodzik evaluated the Plaintiff. The Plaintiff claims that, although the ALJ gave Dr. Dodzik's evaluations significant weight, the ALJ gave too little consideration to some of Dr. Dodzik's findings. The Plaintiff argues that Dr. Dodzik noted that some of the Plaintiff's attentional testing showed marked impairment, and that the ALJ should have clarified Dr. Dodzik's findings because they were conflicting. The Plaintiff faults the Magistrate Judge with "essentially averag[ing] Dr. Dodzik's attentional findings without considering what the different results mean." (Pl.'s Objection 2; DE 22.) The Plaintiff also points to Dr. Dodzik's predicating any return to work on the existence of adaptive services, medication compliance, and better seizure control as evidence that his report does not support the ALJ's finding that the Plaintiff's concentration impairments were moderate, as opposed to severe.

The Plaintiff also complains that the Magistrate Judge overlooked his argument that because Dr. Huang and Dr. Dodzik evaluated the same thing—mental impairments caused by the Plaintiff's seizure disorder—it was inconsistent for the ALJ to credit Dr. Dodzik's report and not Dr. Huang's. The Plaintiff asserts that when taken together, "the evaluations of Drs. Huang and Dodzik indicate more than a moderate impairment of [the Plaintiff's] ability to concentrate." (Pl.'s Objection 4.)

An ALJ is not required to address every piece of evidence, but he must articulate some

legitimate reason for his decision, and must build an accurate and logical bridge from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The ALJ articulated reasons for concluding that Dr Dodzik's evaluation supported a finding of moderate impairment, and for giving Dr. Huang's evaluation little weight.

*1.     The ALJ's Consideration of Dr. Frank Dodzik's Evaluation*

In order to determine whether an impairment is severe, an ALJ must determine whether the impairment significantly limits a person's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Additionally, the ALJ must examine not only concentration, persistence, and pace, but also daily living, social functioning, and episodes of decompensation. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(C). The ALJ examined these areas and articulated the reasons behind his findings.

The ALJ considered Dr. Dodzik's findings on attentional capacity in connection with the rest of the evidence in the record. The ALJ stated that neuropsychological testing noted difficulties in attention span, but that Dr. Dodzik concluded that some of these attention problems were probably due to seizures. The ALJ correctly noted that Dr. Dodzik found that the Plaintiff did not have a full-blown learning disability or cognitive complaints, and that the Plaintiff was able to get good grades in school when he was interested in a subject, and that this tended to contradict the allegations of severe memory and attention deficit problems. The ALJ concluded:

> After careful review of the record, including the testimony at the hearing, the undersigned finds that the claimant has moderate difficulties in maintaining concentration, persistence or pace. Dr. Dodzik's testing found that the claimant had a weakness in his working memory. In addition, the claimant was referred to

8

> the Northeastern Center by his mother for help with disorganization and, as noted above, he has medication con-compliance issues. The undersigned notes, however, that the claimant has been able to sustain continuing employment. The undersigned's review of the record revealed no episodes of decompensation and no evidence of "C" criteria.

(R. 20.)

The Plaintiff does not agree with the ALJ's assessment of Dr. Dodzik's findings. He contends that because Dr. Dodzik predicated the Plaintiff's return to work on medication compliance and adaptive services, that he could not perform regular competitive work. The Plaintiff cites 20 C.F.R. § 404.1573(d) for the proposition that if work is done "under special conditions," then the Commission "may find that it does not show that you have the ability to do substantial gainful activity." This argument is difficult to follow since the ALJ did not find that the Plaintiff engaged in substantial gainful activity at Step One. And at Step Five, the ALJ finding regarding the Plaintiff's residual functional capacity described numerous limitations on the Plaintiff's work that are not inconsistent with Dr. Dodzik's comment about adaptive services. Additionally, this Court's task is limited to determining whether the ALJ's factual findings are supported by evidence that a reasonable person would accept as adequate to support the conclusion. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). It is difficult to see the Plaintiff's complaint as anything more than a request to reweigh the evidence and to then give greater weight to the specific findings that the Plaintiff believe supports his claim of disability. Weighing conflicting evidence from medical sources is what the ALJ is required to do. *Cf. Young*, 362 F.3d at 1001 (noting that the ALJ weighs conflicting evidence from medical experts and the court may not reweigh the evidence). The ALJ did not ignore Dr. Dodzik's findings, but considered them in light of all the evidence in the record. Because the conclusion the ALJ

reached was supported by substantial evidence, it cannot be disturbed by this Court.

The Plaintiff makes another curious argument when he contends that "too little is understood about Dr. Dodzik's findings to really be able to tell what they mean," and then submits in the next sentence that "[t]he ALJ gave too little consideration to the fact that Dr. Dodzik reported some of [the Plaintiff's] attentional testing showed marked impairment." (Pl. Obj. 2.)[1] The Plaintiff argues that a remand would give the ALJ an opportunity to clarify issues with Dr. Dodzik, as he should have done in the first place because the "burden had shifted to the Commissioner when [the ALJ] found [the Plaintiff] was not disabled at Step Five." (*Id.*). But the burden on the Commissioner relates to the work that exists in significant numbers in the national economy, *see* 20 C.F.R. §§ 404.1512(g) & 404.1560(c), and the Plaintiff appears to be arguing that he was not capable of performing work because his memory and concentration were severely impaired, not because jobs that required only minimal memory and concentration did not exist in sufficient numbers in the national economy. The ALJ built an accurate and logical bridge between the evidence regarding the Plaintiff's ability to concentrate; his finding that the Plaintiff's ability to maintain persistence, concentration, and pace was moderately impaired; and his conclusion that the Plaintiff had residual functional capacity to perform light work tailored to account for his memory and concentration weaknesses.

---

[1] Again, the Plaintiff's argument appears to be a request for this Court to conclude that certain findings should have outweighed other findings.

**2.** *The ALJ's Consideration of Dr. Rosalind Huang's Evaluation*

Each medical opinion, other than a treating physician's opinion entitled to controlling weight, must be evaluated pursuant to the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) to determine the proper weight to apply to it. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p; *see generally White v. Barnhart*, 415 F.3d 654, 658–60 (7th Cir. 2005). The Plaintiff's complaint is that if Dr. Dodzik's report was pertinent, so was Dr. Huang's, and that the ALJ was incorrect to suggest that the two doctors did not evaluate the same thing. The ALJ noted that "[s]ince Dr. Huang did not really analyze the claimant's mental impairments and, rather, focused on the effects of the claimant's seizure disorder," that he gave her psychological evaluation little weight. (R. 13.) The ALJ observed that Dr. Huang did not diagnose any mental disorder, and that she based her findings on the impact of the Plaintiff's seizures as reported by the Plaintiff and his mother. Dr. Huang's evaluation added little to the analysis of the Plaintiff's memory impairment. Dr. Huang's finding was that the Plaintiff's seizures, as reported by his mother, affected his memory and concentration and made him very tired. Dr. Huang, a psychologist, is not a medical doctor, and any diagnosis related to the Plaintiff's seizures was outside her area of expertise. The ALJ addressed the Plaintiff's memory and concentration issues as it related to his seizures in a separate section of his decision. In addition, "medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).[2] In comparison, the ALJ's analysis of Dr. Dodzik's evaluations noted his

---

[2] Additionally, the ALJ found that intensity, persistence, and limiting effects of the Plaintiff' symptoms, as reported by the Plaintiff's mother, were not entirely consistent with or fully supported by the medical and other evidence of record, or by the Plaintiff's course of conduct. Thus, to the extent Dr. Huang's report relied on information provided by the Plaintiff's mother, the ALJ already discounted its accuracy.

11

findings about the claimant's mental health. Consequently, the ALJ's decision to assign little weight to Dr. Huang's opinion because she did not analyze the claimant's mental health is amply supported by the record.

## CONCLUSION

For the foregoing reasons, the Court OVERRULES the Plaintiff's Objections [DE 22], ADOPTS the Report and Recommendation [DE 21], and ACCEPTS the recommended disposition. The Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to ENTER JUDGMENT in favor of the Defendant and against the Plaintiff.

SO ORDERED on March 4, 2009.

                                                    s/ Theresa L. Springmann
                                                  THERESA L. SPRINGMANN
                                                  UNITED STATES DISTRICT COURT